UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MICHAEL JOHNSON, | § | |
| Plaintiff, | § § § | |
| v. | § § | EP-18-CV-00044-FM |
| PRIDE INDUSTRIES, INC., | § § | |
| Defendant. | § § | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Before the court is "Defendant's Motion for Traditional Summary Judgment" ("Motion") [ECF No. 17], filed October 4, 2018 by PRIDE Industries, Inc. ("PRIDE"); "Plaintiff's Response to Defendant's Motion for Traditional Summary Judgment" ("Response") [ECF No. 20], filed October 22, 2018 by Michael Johnson ("Plaintiff"); and "Defendant's Reply in Support of its Motion for Traditional Summary Judgment" ("Reply") [ECF No. 25], filed November 14, 2018. This case involves alleged racial discrimination and retaliation for engaging in protected activity in violation of Title VII. After due consideration of the Motion, Response, Reply, and applicable law, the Motion is **GRANTED**.

I.  **BACKGROUND**

   *A.   Factual Background*

PRIDE Industries, Inc. is a non-profit entity that operates federal service contracts under the Javitts-Wagner-O'Day Act ("JWOD"), also known as the AbilityOne Program.[1] It requires

---

[1] "Defendant's Motion for Traditional Summary Judgment" ("Mot."), ECF No. 17, filed Oct. 4, 2018, "Affidavit of Kathryn Strawder" ("Strawder Aff.") 1 ¶ 3, Ex. B.

1

75% of the labor to be performed by individuals who are blind or severely disabled.[2] PRIDE has a contract with the United States Army at Fort Bliss to provide facilities maintenance.[3]

Plaintiff, who is African-American, was hired as a General Maintenance Worker on March 9, 2015.[4] On May 28, 2016, Plaintiff was promoted to Carpenter.[5] In February 2017, Plaintiff applied and interviewed for a supervisory carpentry position.[6] PRIDE instead selected Gary Koenemann and Rafael Perez for the positions.[7]

As a preliminary matter, the court notes that the record is often unclear about when certain incidents occurred. Plaintiff describes a continuing environment of harassment for an unspecified amount of time.

However, Plaintiff has submitted a handful of written complaints. The record contains a statement drafted by Plaintiff and dated February 3, 2017.[8] Therein, Plaintiff informed PRIDE that his "truck is being tampered with."[9] He reported that a bottle of medicine, batteries from his drill, and a work truck key were missing.[10] He also pointed to a screw sticking out of his right

---

[2] *Id.*

[3] *Id.*

[4] *Id.* at 2 ¶ 4; *see also* Mot., "Affidavit of Ronda Davenport" ("Davenport Aff.") 1 ¶ 4, ECF No. 17-3, filed Oct. 4, 2018; "Plaintiff's Response to Defendant's Motion for Traditional Summary Judgment" ("Resp."), "Employee New Hire Verification Form," Ex. 1.

[5] Resp., "Job Change Acknowledgment," Ex. 6; *see also* Mot., "Oral and Videotaped Deposition of Michael Johnson" ("Johnson Depo.") 38: 13–25, ECF No. 17-1; Strawder Aff. 2 ¶ 4.

[6] Strawder Aff. 2 ¶ 5. It is not clear from the record if there were two supervisory carpentry positions. Since two individuals were selected, the court presumes there were two open positions.

[7] *Id.*

[8] *See* Resp., Ex. 10.

[9] *Id.*

[10] *Id.*

rear tire.[11] Plaintiff wrote, "I feel threatened for my life to work and stressed to work my 9–5 working construction job but have to risk my life . . . ."[12]

On February 15, 2017, Plaintiff filed another complaint to human resources.[13] There, he stated that an employee informed him that another employee had been watching and pointing in his direction.[14] Plaintiff spoke about that occurrence with his supervisor and expressed that he had been continually harassed since his first day of work.[15] Plaintiff submitted another statement to PRIDE, dated February 22, 2017.[16] He wrote that he "found a magazine clip loaded with Dummy Rounds located on the back of my bumper of work truck C-168."[17]

On February 27, 2017, Plaintiff filed an EEOC complaint alleging (1) discrimination based on race and disability and (2) retaliation.[18] Plaintiff claimed that Juan Palomares ("Palomares"), a PRIDE employee, discriminated against him since January 1, 2016.[19] Specifically, Plaintiff alleged that Palomares called him "boy," "pinchi mayate," and "manos."[20] Plaintiff claims he reported the harassment to his supervisor, Armando Morales, as it occurred.[21]

---

[11] *Id.* (also stating that his truck had a flat tire the following day after he had found the screw in his tire).

[12] *Id.*

[13] Resp., "Statement," Ex. 9.

[14] *Id.*

[15] *Id.*

[16] *See* Resp., Ex. 11.

[17] *Id.*

[18] Mot., "Charge of Discrimination" ("EEOC Compl.").

[19] *See id.*

[20] *Id.*

[21] *Id.*

3

Palomares allegedly "escalated the harassment and intimidation" in response.[22] Plaintiff claimed that he was passed over for a supervisory position in favor of a Hispanic male.[23] He also alleged that his "work and equipment has been sabotaged" following a complaint to human resources.[24] Lastly, he pointed to the February 22, 2017 magazine incident.[25] The EEOC dismissed his charge on September 15, 2017.[26]

The Assistant Department Manager and Plaintiff's Vocational Rehabilitation Counselor met with Plaintiff on September 30, 2017 to discuss attendance issues.[27] During the meeting, he resigned.[28]

Plaintiff filed this suit in the 327th District Court of El Paso County on December 14, 2017, alleging race discrimination and retaliation in violation of Title VII.[29] PRIDE removed the case to this court on February 5, 2018.[30] On October 4, 2018, PRIDE moved for summary judgment.[31]

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.; see also* Mot., Ex. 11.

[26] Mot., "Dismissal and Notice of Rights," Ex. 23.

[27] Davenport Aff. 3 ¶ 8.

[28] *Id.* at 3 ¶ 9; *see also* Johnson Depo. 118: 3–121: 13.

[29] "Notice of Removal" ("Not. Rem."), ECF No. 1, filed Feb. 5, 2018, "Plaintiff's Original Petition and Request for Disclosure."

[30] *See generally* Not. Rem.

[31] *See generally* Mot.

*B.     Parties' Arguments*

PRIDE argues summary judgment is appropriate on the following grounds: (1) Plaintiff's claims are not supported by the submitted summary judgment evidence, including his own testimony[32]; (2) Plaintiff did not exhaust administrative remedies and therefore may not pursue a claim of constructive discharge[33]; and (3) Plaintiff's claims of discrimination and retaliation are not supported by adequate evidence.[34]

In opposition, Plaintiff argues that a genuine dispute as to material facts precludes summary judgment on his Title VII claims of discrimination and retaliation.[35] He contends he has satisfactorily established he is a member of a racial minority, and material facts remain as to whether PRIDE discriminated against him based on race.[36] Plaintiff argues that he was passed over for a promotion, experienced retaliation and harassment, and was constructively discharged as a result of reporting the alleged misconduct.[37]

## II.  APPLICABLE LAW

*A.   Summary Judgment*

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38] A dispute over a material fact is genuine "when there is evidence sufficient

---

[32] *Id.* at 5.

[33] *Id.* at 10.

[34] *Id.* at 12.

[35] Resp. 2.

[36] *Id.* at 5.

[37] *Id.* at 10–11.

[38] FED. R. CIV. P. 56(a).

5

for a rational trier of fact to find for the non-moving party."[39] Substantive law defines which facts are material.[40]

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits demonstrating the absence of a genuine issue of material fact.[41] When considering only admissible evidence in the pretrial record,[42] the court will "view all facts in the light most favorable to the non-moving party" and draw all factual inferences in the nonmovant's favor.[43] If the moving party cannot demonstrate the absence of a genuine issue of material fact, summary judgment is inappropriate.[44]

Once the moving party has met its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.[45] The nonmoving party's burden is not satisfied by the raising of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[46] The court does not "in the absence of any proof assume that the nonmoving party could or would prove the necessary facts."[47] When reviewing the parties' submissions, the court does not weigh the evidence or determine the credibility of the

---

[39] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 323 (5th Cir. 2002) (citation omitted).

[40] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[41] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[42] *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

[43] *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 582 (5th Cir. 2006) (per curiam) (citation omitted).

[44] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

[45] *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted).

[46] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (internal quotation marks and citations omitted).

[47] *Id.* at 1075 (emphasis removed).

witnesses."[48] Once the nonmovant has had the opportunity to make this showing, summary judgment will be granted "if no reasonable juror could find for the nonmovant."[49]

## III. DISCUSSION

### A. *Racial Discrimination*

#### 1. Hostile Work Environment

Under Title VII, a "hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."[50] To state a prima facie case of hostile work environment, a plaintiff must establish that: (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action.[51] The parties do not dispute that Plaintiff, who is African-American, is a member of a protected group.

Plaintiff must show the harassment affected a term, condition, or privilege of employment.[52] For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create

---

[48] *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).

[49] *Id.*

[50] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (internal quotation marks omitted).

[51] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

[52] *See id.*

7

an abusive work environment."[53] The court does not view workplace conduct in isolation, but considers the circumstances surrounding the alleged discriminatory conduct.[54] "This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[55] The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[56]

Plaintiff contends a genuine dispute of material facts as to his racial discrimination claim precludes summary judgment.[57] The court does not agree.

    *a.    Slurs and Epithets*

Plaintiff's claim of hostile work environment is primarily based on the alleged use of racial slurs and epithets.[58] He testified that Palomares referred to him as "mayate."[59] Specifically, Plaintiff recalled an incident where he was in an office with his supervisor, another employee, and Palomares.[60] Palomares and the other employee started speaking Spanish once he

---

[53] *Id.* (citation and quotation marks omitted).

[54] *Id.* (quotation marks omitted).

[55] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[56] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

[57] Resp. 5.

[58] *See id.* at 6–10.

[59] Johnson Depo. 55: 19–23, ECF No. 17-1. "Mayate" is a pejorative in Mexican Spanish used to describe black persons. To be clear, it is similar in offensiveness to the n-word. The parties do not dispute this definition, and the court applies this meaning throughout the order.

[60] *Id.* at 55: 24–56: 21.

sat down and used the word "mayate" when discussing a recent job they had all completed involving cement.[61]

Plaintiff also points to an affidavit by Raymond Yanez, a co-worker, in support.[62] Therein, Yanez stated he "saw racial discrimination on a daily basis" by Palomares against non-Hispanics.[63] He further stated that, while he does not remember each incident, he heard Palomares refer to African-Americans as "pinchis mayates," meaning "f****** n*****s," as well as "pinchis negros," meaning "f****** blacks."[64] Yanez testified that Palomares used these terms when discussing jobs or the people who had certain tools, including Plaintiff.[65]

The use of the word "mayate" is reprehensible, and the court does not take use of this word lightly. It is a pejorative in Mexican Spanish, derived from the Náhuatl word, "mayatl."[66] "Mayate" is an extremely derisive and offensive term used to describe black people and has the same taboo status as the n-word. Mexican Spanish is widely spoken in El Paso, and the use of such a term cannot be ignored. The parties do not dispute this understanding.

However, the sole use of racial slurs, including the n-word, is not in itself enough to establish a prima facie case of hostile work environment based on race.[67] In *Johnson v. TCB*

---

[61] *Id.* at 57: 18–58: 11.

[62] Resp. 6.

[63] Resp., "Affidavit of Raymond Yanez" ("Yanez Aff.") 1, Ex. B. ("The entire time I worked at Pride Industries I saw racial discrimination on a daily basis by a Hispanic Supervisor Juan Palomares against non-Hispanics, such as Michael Johnson, who is African American, and against Caucasians.").

[64] *Id.*

[65] *Id.*

[66] *Mayate*, REAL ACADEMIA ESPAÑOLA, rae.es (2018).

[67] *See Johnson v. TCB Const. Co., Inc.*, 334 Fed. App'x. 666, 671 (5th Cir. 2009) (unpublished); *see also Walls v. Turano Banking Co.*, 221 F. Supp.2d 924, 929–31 (N.D. Ill. 2002) (finding that single incident of the use of the n-word in conversation with third party in other cubicle, combined with the supervisor's use of nonracial abusive language and undetailed claims of coworkers slurs, was insufficient to allege hostile work environment); *Talley v.*

*Construction Company, Inc.*,[68] the Fifth Circuit found the plaintiff failed to offer sufficient evidence of harassment, where an employee referred to the plaintiff as a "damn n*****" in an isolated incident.[69] The Fifth Circuit noted that despite the employee's frequent use of the n-word, it was not uttered in the plaintiff's presence.[70] Indeed, courts have found that such second-hand harassment carries less weight than harassment directed at a plaintiff.[71] Here, one specific incident where "mayate" was not directed at Plaintiff and a vague statement by a colleague that the slur was frequently used holds little evidentiary weight.[72]

Plaintiff also claims the words "Manos" and "Mijo" were used in a discriminatory manner.[73] "Manos" means "hands" in Spanish,[74] and Palomares would regularly refer to Plaintiff as "Manos."[75] Plaintiff claims he was called "Manos" in a patronizing manner because his hands are big.[76] Although Plaintiff found the nickname "Manos" offensive,[77] "Manos" is not

---

*Farrell*, 156 F. Supp. 2d 534, 541 (D. Md. 2001) (plaintiff failed to establish prima facie case of hostile work environment where plaintiff alleged incident involving cold medicine and an accompany note reading "sick n****").

[68] *TCB Const. Co., Inc.*, 334 Fed. App'x. at 671.

[69] *Id.*

[70] *Id.*

[71] *Id.*; *see also Moser v. Indiana Dep't of Corrs.*, 406 F.3d 895, 903 (7th Cir. 2005); *Jennings v. Univ. of N.C.*, 444 F.3d 255, 272 (4th Cir. 2006); *Vital v. Nat'l Oilwell Varco*, No. H-12-1357-LHR, 2014 WL 4983485 (Sept. 30, 2014 S.D. Tex.).

[72] *TCB Const. Co., Inc.*, 334 Fed. App'x at 671.

[73] Resp. 6–7.

[74] *Mano*, REAL ACADEMIA ESPAÑOLA, rae.es (2018).

[75] Johnson Depo. 48:20–49:14.

[76] *Id.* at 149: 17–24.

[77] *Id.* at 52: 4–12.

10

an inherently offensive or derogatory term. It is not objectively offensive, that is, "one that a reasonable person would find hostile or abusive."[78]

Plaintiff equates "Mijo" to the racially charged use of "boy" in a belittling fashion.[79] "Mijo" (a contraction of "mi hijo" in Mexican Spanish) is commonly used as a term of endearment, meaning "my son," "sweetheart," "honey," or "dear."[80] The court is mindful that, although "Mijo" does not appear to be offensive on its face, it could be construed as demeaning. However, Plaintiff offers no evidence that Palomares' use of "Mijo" was based on race. Like "Manos," the term is not objectively offensive. While the court does not look at the use of these words in isolation, the use of these words holds little evidentiary weight of racial discrimination. The court also considers the other alleged incidents.

### b. Other Alleged Incidents

The record also contains other incidents, including the leaving of the magazine on the bumper of the truck and the tampering with his work truck and supplies.[81] The magazine incident and the alleged tampering of his work truck occurred within the same month, February 2017, and were shortly after Plaintiff made multiple complaints. At best, Plaintiff has shown that, during the same month he applied for a supervisory position, these alleged discriminatory actions occurred. However, Plaintiff has not presented evidence to show these incidents are connected to racial discrimination. This is insufficient to establish racial discrimination under Title VII.

---

[78] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

[79] *See* Johnson Depo. 46: 5–14.

[80] *Mijo*, WORDREFERENCE.COM, http://www.wordreference.com/es/en/translation.asp?spen=mijo (last visited Dec. 3, 2018).

[81] *See* Resp., Ex. 10; Resp., Ex. 11.

11

Plaintiff claims he was discriminated against throughout the record, but he is unable to point to anything more than ethereal harassment. He presents no evidence besides his own "say so." The few detailed accounts he does point to hold little, if any, evidentiary weight. When considering "all of the circumstances surrounding the alleged discriminatory conduct," Plaintiff has not provided sufficient evidence showing he was subjected to severe or pervasive harassment.[82] Accordingly, Plaintiff has not established a prima facie case of racial discrimination, and his Title VII claim of hostile work environment fails.

2. <u>Failure to Promote</u>

To survive summary judgment under the *McDonnell Douglas* burden-shifting analysis, the plaintiff must first establish a prima facie cause of discrimination.[83] To establish a prima facie case of discrimination in a failure to promote cause, a plaintiff must show: "(1) that the employee is a member of the protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications."[84] The burden subsequently "shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action."[85] If the employer provides a legitimate rationale, the plaintiff must provide adequate evidence to show the reason is mere pretext for racial discrimination.[86]

---

[82] *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (internal quotation marks omitted).

[83] *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[84] *Id.* at 317.

[85] *Id.*

[86] *Id.*

The parties do not dispute that: (1) Plaintiff is a member of a protected group; (2) he sought and was qualified for the position; and (3) he was rejected for the position. This claim hinges on the fourth prong—whether PRIDE promoted applicants with Plaintiff's qualifications.

PRIDE contends summary judgment is appropriate, claiming Plaintiff "cannot identify how he was qualified or what the qualifications of the selected persons were."[87] Even if Plaintiff did so, PRIDE contends it selected two better-qualified candidates due to their "prior supervisory and management experience."[88] In opposition, Plaintiff argues he is qualified for the position, as he previously owned his own construction company.[89] Plaintiff further points out that PRIDE selected a Hispanic male who had not previously worked in that department.[90]

Plaintiff's claim of failure to promote must fail, as he has not provided sufficient evidence showing the employer promoted candidates with *equal qualifications*. At best, the record is vague as to the position's qualifications, Plaintiff's qualifications, and the promoted individuals' qualifications. Indeed, Plaintiff appears to not know anything about the other candidates' qualifications and fails to point to any evidence that might shed light.[91] His sole evidence that he was qualified is that he owned a construction company.[92] This does not show that he had *equal* qualifications. His assertion of equal qualifications is conclusory and speculative. Even when drawing all factual inferences in favor of Plaintiff, he has not carried his

---

[87] Mot. 12.

[88] *Id.* at 12–13.

[89] Resp. 11.

[90] *Id.*

[91] Johnson Depo. 109: 21–110: 14.

[92] *Id.* at 23: 10–24.

burden to show PRIDE promoted candidates with equal qualifications. Consequently, Plaintiff has not established a prima facie case of racial discrimination for failure to promote. Summary judgment is appropriate on this claim.

   3. <u>Constructive Discharge</u>

To succeed in a constructive discharge claim, an employee "must offer evidence that the employer made the employee's work conditions so intolerable that a reasonable employee would feel compelled to resign."[93] The evidence must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment.[94] As discussed above, Plaintiff failed to demonstrate a prima facie case of hostile work environment on the basis of racial discrimination. In other words, he failed to show that he experienced sufficiently pervasive or severe harassment; he was therefore not subjected to a constructive discharge. Accordingly, the court grants summary judgment on Plaintiff's constructive discharge claim.

*B. Retaliation for Engaging in Protected Activity*

   1. <u>Whether Plaintiff Exhausted Administrative Remedies for Constructive Discharge</u>

PRIDE asserts that Plaintiff may not pursue a claim for constructive discharge on the grounds that he did not exhaust his administrative remedies.[95] In opposition, Plaintiff contends he was not required to file a second EEOC charge, "as the constructive discharge occurred after, and as a result of, the filing of his one and only Charge of Discrimination."[96]

---

[93] *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008) (citing *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000).

[94] *Id.*

[95] Mot. 10.

[96] Resp. 23.

14

"Title VII of the Civil Rights act provides for private causes of action arising out of employment discrimination and gives federal courts subject matter jurisdiction to resolve such disputes."[97] A plaintiff must first exhaust administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of any such misconduct.[98] If a plaintiff raises a claim beyond those alleged in the EEOC complaint, "the scope of a Title VII suit extend[s] as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge."[99] The Fifth Circuit has explained that a Title VII cause of action:

> may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.[100]

As established in the Fifth Circuit's decision, *Gupta v. East Texas State University*,[101] "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."[102]

---

[97] *Davis v. Fort Bend Cty.*, 893 F.3d 300, 303 (5th Cir. 2018). In its Motion, Defendant argues courts do not have jurisdiction to consider Title VII claims where the aggrieved party has not exhausted administrative remedies. Mot. 10. The Fifth Circuit recently held in *Davis v. Fort Bend County* that the failure to exhaust administrative remedies prior to bringing a Title VII claim is not a jurisdictional bar, but is simply a prerequisite to suit. *Davis*, 893 F.3d at 303.

[98] 42 U.S.C. § 2000e-5(e)(1).

[99] *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

[100] *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).

[101] 654 F.2d 411 (5th Cir. 1981).

[102] *Id.* at 414.

PRIDE relies on the unpublished Fifth Circuit decision *Simmons-Myers v. Caesars Entertainment Corporation*[103] for the proposition that the *Gupta* exception does not apply when a plaintiff brings both retaliation and discrimination claims.[104] In *Simmons-Myers*, the plaintiff sought the application of *Gupta* to her claim of retaliation *and* her claim for discrimination.[105]

Unlike *Simmons-Myers*, Plaintiff is not seeking the application of *Gupta* to a claim of discrimination. Plaintiff already sought review of his racial discrimination claim and claim of retaliation by the EEOC[106]; he now asserts constructive discharge as a part of his retaliation claim. *Simmons-Myers* does not foreclose the applicability of *Gupta* to a retaliatory claim, despite the presence of a claim of discrimination in the suit. As *Gupta* instructs, this court may consider a claim which grows out of an administrative charge properly before the court.[107]

Here, Plaintiff filed an EEOC charge, asserting he was subject to retaliation for engaging in protected activity.[108] His claim of constructive discharge stems from that very same retaliation claim. Accordingly, the *Gupta* exception applies, and Plaintiff may pursue his claim of constructive discharge before this court.

2. Retaliation

To assert a prima facie case of retaliation, Plaintiff must establish: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists

---

[103] 515 F. App'x 269 (5th Cir. 2013) (unpublished).

[104] Mot. 11.

[105] *See Simmons*, 515 Fed. App'x at 273.

[106] EEOC Compl. ("I complained to my then supervisor Armando Morales (Hispanic) and Human Resources. Nothing was done and Juan Palomares escalated the harassment and intimidation.").

[107] *Gupta v. E. Tex. State Univ.*, 654 F.2d at 414.

[108] *See* EEOC Compl.

16

between the protected activity and the adverse employment action.[109] To succeed in a constructive discharge claim, an employee "must offer evidence that the employer made the employee's work conditions so intolerable that a reasonable employee would feel compelled to resign."[110] The evidence must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment.[111]

### a. Protected Activity

In this case, Plaintiff clearly engaged in protected activity. An employee has engaged in protected activity where he "has opposed any practice made an unlawful practice" under Title VII or he "has engaged in a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."[112] Plaintiff claims he made numerous complaints regarding Palomares' use of the terms "mayate," "manos," and "mijo"[113]; the following and taking pictures of Plaintiff[114]; the tampering with his truck and other work supplies[115]; and the leaving of the magazine on his bumper.[116] In addition to oral complaints, the record includes three formal complaints and an EEOC complaint.[117] Plaintiff has accordingly provided sufficient evidence that he engaged in protected activity.

---

[109] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

[110] *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008).

[111] *Id.*

[112] 42 U.S.C. 2000e-3(a); *see also Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

[113] Johnson Depo. 48: 11–19, 50: 7–51:16, 54:18–55:8, 59: 9–22, 61: 22–25.

[114] *Id.* at 67: 18–21.

[115] *See* Ex. 10.

[116] *See* Ex. 11.

[117] *See* Ex. 8, Ex. 10, Ex. 11, EEOC Compl.

### b. Causality

To state a Title VII retaliation claim, Plaintiff must establish a causal link between the protected activity and the adverse employment action and harassment.[118] PRIDE argues the retaliation claim must nevertheless fail, as Plaintiff failed to raise any evidence of a causal link between the protected activity and the alleged adverse employment action—constructive discharge.[119] The court agrees.

Plaintiff has not offered any evidence that the leaving of the magazine and interference with his work supplies are connected to the filing of the complaints and thus resulted in constructive discharge. Such an inference is highly speculative.

Nevertheless, temporal proximity can be used to establish a causal link where there is circumstantial evidence. Courts regularly look to the timing between an employee's protected activity and the adverse action against him or her.[120] The Supreme Court has explained that "cases that accept *mere* temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be '*very close*.'"[121]

The record contains numerous accounts of alleged actions motivated by discriminatory animus and retaliation. However, there is not close temporal proximity to infer the constructive discharge was a result of retaliation. Plaintiff resigned over six months following the last

---

[118] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

[119] "Defendant's Reply in Support of its Motion for Traditional Summary Judgment" 7, ECF No. 25, filed Nov. 14, 2018.

[120] *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation.").

[121] *Breeden*, 532 U.S. at 273 (emphasis added).

18

reported incident, the one involving the magazine loaded with Dummy Rounds.[122] Plaintiff does not point to any other incidents that occurred during those six months. Rather, Plaintiff claims to have been subjected to a "pattern of persistent racial harassment."[123] While the court is mindful of the harmful effects of racial discrimination, this claim for constructive discharge is based on retaliation for engaging in a protected activity—the filing of complaints. This is not a claim for constructive discharge on the basis of racial discrimination. An alleged pattern of persistent racial harassment is inapposite to this claim and does not preclude summary judgment.

Moreover, Plaintiff's testimony suggests he had other motives for his resignation. He stated that while he resigned five days following the dismissal of his EEOC complaint, he did not resign because of the dismissal of his EEOC complaint.[124] Plaintiff also claims PRIDE failed to accommodate his medical condition by not allowing him to take a 10-15 minute break every two hours[125] and interfered with his ability to attend medical appointments.[126] The record does not reflect that Plaintiff resigned due to retaliatory activity, nor can this court infer causality per temporal proximity. Accordingly, the court grants summary judgment as to Plaintiff's claim of retaliation.

---

[122] *See* Ex. 22.

[123] Resp. 18.

[124] Johnson Depo. 130: 7–15.

[125] *Id.* at 126: 6–12.

[126] *Id.* at 125: 10–14.

## IV. CONCLUSION AND ORDERS

After careful consideration of the submitted summary judgment evidence, the court grants summary judgment on all claims. Accordingly, "Defendant's Motion for Traditional Summary Judgment" [ECF No. 17] is **GRANTED**.

**SO ORDERED.**

**SIGNED** this __18__ day of **December, 2018**.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**